IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| COMPASS MINING, INC., <br><br> Plaintiff, <br><br> v. <br><br> XENON MANAGEMENT GROUP, LLC., and ERIC DILA, <br><br> Defendants. | Civil Action No. 4:21-cv-4022 <br><br> **JURY COMPLAINT** |

## INTRODUCTION

1. Defendant XENON Management Group, LLC., ("XENON") and Defendant Eric Dila (collectively, "Defendants") engaged in fraudulent and deceptive behavior to wrongfully induce Plaintiff Compass Mining, Inc. ("Plaintiff" or "Compass") to pay Defendants $150,000. Defendants have subsequently retained those funds and failed to perform numerous duties promised to Compass. Based on Defendants' misconduct, Compass now brings this action for breach of contract, fraud, conversion, civil theft, and unjust enrichment, under the state and common laws of the State of Texas.

2. Plaintiff seeks $150,000 plus interests, fees and costs, statutory, and other exemplary and/or punitive damages as justice demands.

## PARTIES

3. Compass is a Delaware corporation. Its primary place of business is in Delaware.

4. XENON is a Texas limited liability company, and, upon information and belief, has its principal place of business in Katy, Texas.

5. Upon information and belief, XENON has a single member, Eric Dila. Upon information and belief, Eric Dila is a citizen of Texas.

1

6. Upon information and belief, Eric Dila is an individual who resides in Katy, Texas.

## JURISDICTION AND VENUE

7. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). There is complete diversity between the parties: Compass is a citizen of Delaware, and XENON and Dila are citizens of Texas. And the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. This Court has personal jurisdiction over Eric Dila because he is domiciled in Texas and conducts business there. This Court has personal jurisdiction over XENON because it is a Texas limited liability company.

9. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) and (b)(3), in that a substantial part of the events or omissions giving rise to the claim occurred in this District and the property that is the subject of the action is situated in this District. Venue is also proper in this district under 28 U.S.C. § 1391(b)(1) because Eric Dila resides in this District and all defendants reside in Texas.

## FACTUAL ALLEGATIONS

10. Compass provides customers the necessary tools to mine bitcoin.

11. Mining bitcoin is a computing-intensive activity. For a fee, Compass provides its customers with datacenters they can use to mine bitcoin. In some cases, Compass also provides computers that its customers can host at Compass's datacenters.

12. This action concerns one such datacenter.

13. In 2021, Compass sought to lease a datacenter from Defendants located in Volo, Illinois, a suburb of Chicago (the "Chicago Datacenter").

14. The Chicago Datacenter is located at 300 S Fish Lake Road, Volo, Illinois 60073.

15. On September 5, 2021, Corey McCauley, a mutual contact of the Parties, introduced Defendant Eric Dila and Thomas Heller, Chief Business Officer ("CBO") of Compass, via Zoom.

16. During that Zoom meeting, Eric Dila, as an agent of XENON, represented that he and XENON were in the process of purchasing the Chicago Datacenter.

17. Thereafter, Eric Dila and Thomas Heller, as well as Whitney Gibbs, Chief Executive Officer ("CEO") of Compass, and Neil Galloway, Director of Mining Operations for Compass, began negotiations for XENON to lease the Chicago Datacenter to Compass. These negotiations occurred via email, telephone, and Telegram messages throughout September 2021.

18. During these negotiations, on multiple telephone and Zoom calls and in multiple Telegram messages, Eric Dila represented to Thomas Heller and Whitney Gibbs that XENON was in the process of acquiring the Chicago Datacenter and that it could lease the facility to Compass for the facility to be fully operational for Compass by October 2021.

19. Specifically, on September 7, 2021, in Telegram messages, Eric Dila represented to Thomas Heller that XENON would soon be able to lease the Chicago Datacenter to Compass because it was in the process of acquiring the Chicago Datacenter. Eric Dila noted that "we've escrowed the funds for acquisition/tokenize and a multiyear mgt deal with our partners" in discussing the Chicago Datacenter.

20. Also on September 7, 2021, in Telegram messages, Eric Dila responded to Thomas Heller and Whitney Gibbs's concerns by noting "we have full assurance from my partners and also the datacenter alliance that we are going to build more of these (perhaps globally) at the pace of blockchain," that he was "confident everything will pass," and that "[t]he deposit guarantees all parties . . . are after a common goal and seriousness [sic] to get your company mining with no

3

delays in the coming weeks."

21. In support of these representations, in or around September 2021, Mr. Dila provided a pitch deck to Compass summarizing details of the Chicago Datacenter and the proposed lease agreement between Compass and XENON. This pitch deck included a timeline showing that the Chicago Datacenter would be outfitted in September and operational by October 2021.

22. Compass relied on Defendants' representations and supporting documents in its agreement to enter into the Letter of Intent ("LOI") on September 7, 2021, attached here as Exhibit A.

23. Compass's reliance was reasonable in light of the level of specificity provided by Defendants.

24. XENON prepared the LOI. Thomas Heller, as agent for Compass, signed the LOI.

25. Under the LOI, the Parties agreed to formalize an agreement under which XENON would lease the Chicago Datacenter to Compass.

26. On September 11, 2021, Neil Galloway traveled to the Chicago Datacenter for a site visit. There, Eric Dila represented to Neil Galloway that XENON was in the process of acquiring the Chicago Datacenter.

27. Thomas Heller, in his capacity as CBO of Compass, paid a one-time "installation fee" of $150,000 specified by the LOI on September 14, by wire transfer to XENON, located in Katy, Texas.

28. Compass relied on Defendants' representations in paying XENON $150,000. This reliance was reasonable in light of the specific information provided about the site by Defendants and the site visit conducted by the Parties.

29. On September 17, 2021, Eric Dila sent Thomas Heller a redacted copy of an Asset

4

Purchase Agreement concerning the Chicago Datacenter, in response to Whitney Gibbs and Thomas Heller's requests that Defendants provide more information on XENON's acquisition of the Chicago Datacenter.

30. The Asset Purchase Agreement, between XENON and a third party, states that XENON would acquire the Chicago Datacenter from the third party on the "Closing Date." But the copy of the Asset Purchase Agreement Defendants provided did not list a Closing Date.

31. Since Compass's payment of $150,000 to Defendants in September 2021, Defendants have failed to take any material steps to lease the Chicago Datacenter to Compass.

32. Upon information and belief, XENON has not acquired the Chicago Datacenter.

33. In addition, after signing the LOI and paying Defendants $150,000 Compass learned that XENON was merely a broker of the Chicago Datacenter without the authority to unilaterally lease the facility to Compass.

34. Defendants have retained the $150,000 in Katy, Texas, without conveying these funds to the true owner of the Chicago Datacenter or returning them to Compass.

## CAUSES OF ACTION

### COUNT I
### Breach of Contract against XENON

35. Compass incorporates each of the preceding paragraphs as if fully stated herein.

36. XENON and Compass created an oral contract, the sum and substance of which is set forth in the LOI, on September 7, 2021.

37. Under the Parties' agreement, XENON promised to Compass that it would diligently pursue an arrangement under which XENON would lease the Chicago Datacenter to Compass. These steps included but were not limited to providing information needed to complete the lease of the Chicago Datacenter in a timely manner—including documentation demonstrating

proof of XENON's legal right to lease the Chicago Datacenter—and completing negotiations in time for the Chicago Datacenter to be operational by October 2021. XENON also impliedly represented that XENON had the legal authority to unilaterally lease the facility.

38. In exchange, Compass promised to pay XENON a $150,000 fee.

39. On September 14, 2021, Compass paid Defendants the $150,000.

40. XENON did not diligently pursue a lease agreement for the Chicago Datacenter.

41. XENON failed to provide the information needed to complete the lease, including documentation demonstrating proof of XENON's legal right to lease the Chicago Datacenter, that it promised to Compass.

42. The Parties have not completed a lease agreement, and the Chicago Datacenter is not operational.

43. XENON did not own the Chicago Datacenter. At all relevant times, it was merely a broker for the Chicago Datacenter with no authority to unilaterally lease the facility.

44. XENON has not conveyed Compass's $150,000 to the true owner(s) of the Chicago Datacenter.

45. XENON's breaches have injured Compass by the loss of the $150,000 and by placing Compass in a position of having no prospect of leasing the Chicago Datacenter despite months of negotiations.

46. By reason of the foregoing, XENON is liable for damages in an amount to be determined at trial.

47. In the alternative to actual damages, Compass requests the equitable remedy of rescission of the LOI and accompanying oral contract, which would entitle Compass to be refunded the $150,000, as well as damages for Compass's time and effort in negotiating with XENON,

attorney's fees and costs, and exemplary/punitive damages in an amount to be determined at trial.

## COUNT II
## Fraud/Fraudulent Misrepresentation/Fraudulent Inducement
## Against XENON and Eric Dila

48. Compass incorporates each of the preceding paragraphs as if fully stated herein.

49. On September 7, 2021, Eric Dila told Thomas Heller, an agent of Compass, that XENON would soon be able to lease the Chicago Datacenter to Compass because it was in the process of acquiring the Chicago Datacenter.

50. On September 7, 2021, Eric Dila stated in Telegram messages that "[t]he deposit guarantees all parties . . . are after a common goal and seriousness [sic] to get your company mining with no delays in the coming weeks."

51. On September 11, 2021, during a site visit of the Chicago Datacenter, Mr. Dila represented to Neil Galloway that he was in the process of acquiring the Chicago Datacenter.

52. Throughout the negotiations, in Telegram messages, emails, and Zoom calls, Eric Dila represented to Thomas Heller and Whitney Gibbs that XENON could lease the facility to Compass for the facility to be fully operational for Compass by October 2021.

53. During these negotiations, Mr. Dila, on behalf of XENON, shared a pitch deck with Compass that implied Defendants had full authority to lease the Chicago Datacenter and represented that the facility would be operational by October 2021.

54. These representations were all false.

55. At the time these statements were made, Defendants knew they were false. Specifically, Defendants knew that they did not have the authority to unilaterally lease the facility in time for the facility to be operational for Compass by October 2021 and that it was not possible for them to move forward with lease negotiations.

56. Defendants' promises detailed above were false promises of future performance made with a present intent not to perform.

57. Defendants made the above representations with the intention that Compass act upon the representations by signing the LOI, agreeing to the accompanying oral contract, and paying Defendants $150,000.

58. Compass did rely on Defendants' representations. Absent such representations, Compass would not have entered into the LOI or paid Defendants the $150,000.

59. Compass has been damaged by the loss of $150,000 with no prospect of leasing the Chicago Datacenter.

60. By reason of the foregoing, XENON and Eric Dila are liable in the amount of $150,000 in actual damages, plus interest, attorney's fees and costs, and exemplary/punitive damages in an amount to be determined at trial.

61. In the alternative to actual damages, Compass requests the equitable remedy of rescission of the Parties' oral contract, which would entitle Compass to be refunded the $150,000, as well as attorney's fees and costs and exemplary/punitive damages in an amount to be determined at trial.

### COUNT III
### Conversion against XENON and Eric Dila

62. Compass incorporates each of the preceding paragraphs as if fully stated herein.

63. Compass owned the $150,000 that it provided to Defendants.

64. Compass intended to pay the $150,000 to an entity with the authority to enter into the LOI and the authority to ultimately lease the Chicago Datacenter to it.

65. Defendants were not owners of the Chicago Datacenter at any relevant time. They were merely brokers for the Chicago Datacenter with no authority to unilaterally lease the facility.

66. Defendants, unlawfully and without authorization, assumed and exercised dominion and control over the $150,000 inconsistent with Compass's rights as an owner.

67. Upon learning that Defendants did not have the authority represented to Compass to lease the Chicago Datacenter, Compass demanded return of its property.

68. Defendants refused to return the property.

69. In addition, to date, Defendants have not conveyed the property to the true owner of the Chicago Datacenter and have instead wrongfully retained the property for themselves.

70. Compass is now damaged by the loss of $150,000.

71. By reason of the foregoing, XENON and Eric Dila are liable in the amount of $150,000 in actual damages, plus interest, attorney's fees and costs, and exemplary/punitive damages in an amount to be determined at trial.

## COUNT IV
### Violation of Tex. Civ. Prac. & Rem. Code Ann. § 134.003(a), Civil Theft against XENON and Eric Dila

72. Compass incorporates each of the preceding paragraphs as if fully stated herein.

73. Compass, as owner of the funds, had a possessory right to the $150,000 provided to Defendants.

74. Compass intended to pay the $150,000 to an entity with the authority to enter into the LOI and the authority to ultimately lease the Chicago Datacenter to it.

75. Defendants were not owners of the Chicago Datacenter at any relevant time. They were merely brokers for the Chicago Datacenter with no authority to unilaterally lease the facility.

76. Defendants thus unlawfully appropriated the $150,000 in violation of the Texas Penal Code because the appropriation was without Compass's effective consent.

77. Compass is now damaged by the loss of $150,000.

78. By reason of the foregoing, XENON and Eric Dila are liable in the amount of $150,000 in actual damages, plus interest, attorney's fees and costs, and statutory damages in the amount of $1,000.

## COUNT V
## Unjust Enrichment against XENON and Eric Dila

79. Compass incorporates paragraphs 1 through 34 and paragraphs 48 through 78 as if fully stated herein and now states, in the alternative to paragraphs 35 through 47, the following:

80. Defendants have obtained a benefit from Compass in their receipt of Compass's $150,000.

81. The benefit was obtained by XENON and Eric Dila's fraudulent behavior.

82. By reason of the foregoing, Defendants were unjustly enriched by $150,000 and is liable to Compass for that amount.

## PRAYER FOR RELIEF

WHEREFORE, Compass requests that judgment be entered in its favor as follows:

A. For an order finding in favor of Compass on all counts asserted herein;

B. For an order awarding Compass actual, statutory, exemplary, punitive, and treble damages in amounts to be determined by the Court and/or jury;

C. Or, in the alternative to contract damages, for an order awarding Compass the equitable relief of rescission;

D. For an order awarding Compass its attorney's fees, costs, and expenses of suit;

E. For pre- and post-judgment interest on all amounts awarded; and

F. For all other relief the Court may deem just and necessary.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

December 9, 2021.                                           Respectfully submitted,


                                                                                                By: */s/ Benjamin F. Foster*
Benjamin F. Foster
Texas Bar No. 24080898
ben@fsfirm.com
**BENJAMIN FOSTER, PLLC**
808 Travis St. Suite 1420
Houston, Texas 77002
Telephone: (713) 331-5254


-and-

Alec Harris
Kathleen Guilfoyle
**ARMSTRONG TEASDALE LLP**
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
*720.200.0676*
*Pro Hac Vice Forthcoming*

***ATTORNEYS FOR PLAINTIFF***